Michael J. Frevola
Christopher R. Nolan
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

ATTORNEYS FOR DEFENDANT
OCEANOGRAFIA S.A. DE C.V.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DREDGING INTERNATIONAL MEXICO S.A. DE C.V.,<br><br>                       Plaintiff,<br><br>     -against-<br><br>OCEANOGRAFIA S.A. DE C.V.,<br><br>                       Defendant. | 07 Civ.11394 (GEL) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR COUNTERSECURITY**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii
PRELIMINARY STATEMENT .................................................................................................1
STATEMENT OF FACTS ..........................................................................................................2
    A.   KMZ 48 .................................................................................................................3
    B.   KMZ 50 .................................................................................................................4
    C.   KMZ 50 & OTHER PARTS OF THE KUMAZA PROJECT .............................................4
ARGUMENT.................................................................................................................................5
POINT I  OCEANOGRAFIA IS ENTITLED TO FULL COUNTER-SECURITY FOR ITS COUNTER-CLAIM ..........................................................................................................6
    A.   OCEANOGRAFIA HAS SET FORTH A WELL-PLEADED COUNTER-CLAIM AND INTRODUCED AMPLE EVIDENCE IN SUPPORT OF ITS ALLEGATIONS AGAINST DIMEX ..................6
    B.   FULL COUNTER-SECURITY IS APPROPRIATE IN THIS CASE BECAUSE OF THE SCOPE OF THE $131,584,029 PROJECT AND THE COMPLEX NATURE OF THE UNDERLYING MERITS TO BE DECIDED IN HOUSTON ARBITRATION ................................................9
CONCLUSION............................................................................................................................12

# TABLE OF AUTHORITIES

## CASES

*Front Carriers, Ltd. v. Transfield ER Cape. Ltd.*, No. 07 Civ. 6333, 2007 WL 4115992,
    (S.D.N.Y. Nov. 19, 2007) ............................................................................................. 7, 9-10

*Pancoast Trading S.A. v. Eurograni S.R.L*,
    No. 07 Civ. 8581, 2008 WL 190376 (S.D.N.Y. Jan. 22, 2008) ...................................... 6, 8-10

*Result Shipping Co., Ltd. v. Ferruzzi Trading USA Inc.*,
    56 F.3d 394 (2d Cir. 1995) ................................................................................................ 6-7

*Voyager Shipholding Corp. v. Hanjin Shipping Co., Ltd.*,
    No. 07 Civ. 11123, 2008 WL 400923 (S.D.N.Y. Feb. 13, 2008) ............................................ 7

## STATUTES

Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset
    Forfeiture Actions Supplemental Rule B ..................................................................... *passim*

Rule E(7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset
    Forfeiture Actions ........................................................................................................ *passim*

## PRELIMINARY STATEMENT

Defendant Oceanografia S.A. de C.V. respectfully submits this memorandum of law in support of its motion for counter-security against plaintiff Dredging International Mexico S.A. de C.V. ("DIMEX") pursuant to Rule E(7)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, which presents the following issues:

(1)  It is well settled that an order directing the posting of counter-security is appropriate when a plaintiff has sought security for its claims and the defendant's counter-claim are based on the same transaction and occurrence. Plaintiff DIMEX has obtained an attachment order for $4,749,382.20 against Oceanografia and has attached $2.7 million to date, while Defendant Oceanografia has a counter-claim under the same contract totaling $7,327,662.43. Should the Court grant Oceanografia's motion for counter-security?

(2)  Supplemental Rule E(7)(a) does not limit the amount of counter-security that a counter-claimant may obtain to the amount of security sought by the plaintiff. Oceanografia's counter-claims are maritime claims for which it could have sought its own Rule B attachment order against DIMEX, and Oceanografia has not obtained security for its claims anywhere. Should the Court grant Oceanografia's motion for counter-security in an amount greater than the amount sought to be attached by DIMEX?

Oceanografia respectfully submits that the answer to both questions should be "yes," and that this Court should issue an order directing DIMEX to post counter-security in the amount of $7,327,662.43.

## STATEMENT OF FACTS

The allegations in DIMEX's complaint, and Oceanografia's counter-claim, arise under the same project, the KUMAZA Project (the "Project"), an oil pipeline marine construction project Oceanografia was awarded by PEMEX Exploration and Production ("PEMEX"). Complaint, ¶ 5; Declaration of Manuel J. Perez dated March 26, 2008 ("Perez Dec."), at ¶ 3, (filed herewith).

The Project is located in La Sonda de Campeche, an oil producing region of Mexico. In order to perform portions of its obligations under its contract for the Project with PEMEX (the "Main Contract"), Oceanografia retained DIMEX as a subcontractor under a Subcontract Agreement dated November 26, 2006 ("Subcontract Agreement"). Perez Dec. ¶ 10. The total value of the Main Contract, as to Oceanografia, is scheduled to be $131,584,029.00, for performance of its services. Under the Subcontract Agreement, DIMEX was to have received $14,269,762.00 for its portion of work performed under the Main Contract. *Id.*

The Subcontract with DIMEX constitutes only one segment of the Project – called the Package L – comprised of pipelines 48 and 50 ("KMZ 48" and "KMZ 50," respectively). *Id.* ¶ 12. Exhibit B of the Subcontract sets forth the "Scope of Work," and provides that DIMEX will perform, *inter alia,* both pre-lay and post-lay rock dumping to create a continuous berm along the length of the KMZ 48, while Oceanografia was responsible for the laying of the pipeline. *Id.*

To perform its obligations under the SA, DIMEX secured the use of the "Dynamic Positioned Fall Pipe Vessel" TIDEWAY ROLLINGSTONE (the "Vessel"), a specialized vessel built for use in projects such as the Project. *Id.* ¶ 17. The Vessel is equipped both with: (a) a dynamic positioning capability, which essentially allows the Vessel's satellite navigation system to interface with its propulsion system to keep the Vessel correctly positioned continuously despite wind, currents, waves and other forces which affect a Vessel at sea; and (b) a fall pipe,

which is a telescoping pipe that can be extended off the Vessel's stern to the sea floor in order to accurately and precisely dump stones or other cargo on the sea floor. *Id.*

Soon after Oceanografia began laying the pipeline along the pre-lay rock berm route set by DIMEX, DIMEX admitted in a notice to Oceanografia that it had placed the pre-lay rock berm for KMZ 48 in the wrong location along the seabed floor. Perez Dec. ¶ 18. The improper placement of this berm led to both a number of logistical problems and increased financial undertakings not anticipated under the Subcontract Agreement. *Id.* The damages, as best can be determined at this time, can be described in three categories based on different phases of the Project.

### A.     KMZ 48

PEMEX fined Oceanografia $5,121,221.30 for construction delays of KMZ 48. Of that amount, $1,242,715.41 is directly attributable to DIMEX's breach of the Subcontract Agreement. *Id.* ¶ 21. Over 27 days of delays were incurred in preparing a plan to correct the DIMEX errors and carrying out the plan with the use of a new vessel as DIMEX would no longer be associated with the Project. *Id.*

DIMEX is no longer working on the Project as it withdrew the Vessel from the Project prior to completing its obligations under the SA. Perez Dec. ¶ 22. After DIMEX withdrew the Vessel from the Project, Oceanografia was required to employ the services of another vessel, the WITCH QUEEN, to correct the placement of the pipeline along the seabed. The eight days of work performed by the WITCH QUEEN in KMZ 48 pipeline re-placement resulted in $786,013.25 in damages. *Id.* ¶ 23.

Oceanografia also lost $524,971.42, which was the amount spent on quarry rock for pipe-lay use on the KMZ 48. When DIMEX laid the rock in the wrong location at the approximate

3

depth of 275 feet, the materials could not be used again because it is impossible to move the misplaced quarry rock to the correct location. Perez Dec. ¶ 20.

B.      KMZ 50

Another of Oceanografia's vessels, the BOLD ENDURANCE, was performing work on the KMZ 50 at time of DIMEX's breach of the Subcontract Agreement. Its pipeline-related actions were delayed while Oceanografia completed its plan to continue its work on KMZ 50 without DIMEX. While Oceanografia has not sought counter-security here against DIMEX for these delays, the delays had had another ramification which Oceanografia does claim.

The BOLD ENDURANCE also stepped in to perform duties under KMZ 50 that were supposed to be performed by DIMEX, before they withdrew from the Subcontract Agreement. Because the BOLD ENDURANCE did not have the unique capabilities of the TIDEWAY ROLLINGSTONE, however, Oceanografia was compelled to lower bags of cement to divers on the seabed in order to ensure the accuracy of placement of the rock berm. This process was far more labor intensive and time consuming than would have been the case using the TIDEWAY ROLLINGSTONE. Perez Dec., ¶ 25. The additional time required and labor costs resulted in an added $2,476,231.00 in damages to complete rock berm placements on KMZ 50. *Id.* ¶ 25. In addition to the costs incurred by Oceanografia to perform DIMEX's obligations, Oceanografia also sustained damages in the amount of $535,540.72 in lost profits on the KMZ 50 operation because of these DIMEX-related delays and additional work. *Id.* ¶ 26.

C.      KMZ 50 & Other Parts of the KUMAZA Project

As discussed above, DIMEX's default caused delays to the KMZ 50 operation. The BOLD ENDURANCE would have completed its Project duties before the annual bad weather season in La Sonda de Campeche if DIMEX had not breached the Subcontract Agreement. Instead, the KMZ 50 operation was delayed and extended into the bad weather season. Because

4

of weather-related port closings, Oceanografia lost $176,219.63 a day for the BOLD ENDURANCE and $1,762,190.63 for ten total days of port closings. Perez Dec. ¶ 25.

If Oceanografia did not undertake the additional expense and work duties to complete DIMEX's responsibilities under the Subcontract Agreement, Oceanografia could have been banned from bidding on future government contracts for three years, under Mexican law. *Id.* ¶ 11.

In this proceeding, DIMEX filed its complaint on December 19, 2007. It alleges DIMEX performed all the tasks required under the subcontract, entitling it to payment and relief under Supplemental Rule B in the amount of $4,749,382.20. Complaint, ¶ 6. DIMEX currently has attached $2,776,677.90 as a result of this Court's order of attachment. Affirmation of Michael J. Frevola dated March 26, 2008, ¶¶ 5-6.

## ARGUMENT

The United States Court of Appeals for the Second Circuit and courts within this District have recognized that a defendant is entitled to counter-security when it alleges a non-frivolous counter-claim that arises out of the same transaction and occurrence as the plaintiff's claim. Here, Oceanografia's counter-claim arises from the very Subcontract Agreement on which the claims in DIMEX's Verified Complaint are founded. As such, this Court should order DIMEX to post counter-security within ten days of its opinion and order. In the event that DIMEX refuses to comply with a counter-security order that might be issues, the attachment order against Oceanografia should be vacated and/or DIMEX should be enjoined from prosecuting its claims against Oceanografia here, in Houston arbitration, or elsewhere.

## POINT I

### OCEANOGRAFIA IS ENTITLED TO FULL COUNTER-SECURITY FOR ITS COUNTER-CLAIM

Oceanografia's counter-security request is premised on a valid counter-claim arising out of DIMEX's breach of the Subcontract Agreement. That same Subcontract Agreement serves as the predicate for claims alleged by DIMEX in its Verified Complaint. Hence, as discussed below, Oceanografia's motion for counter-security should be granted in full.

**A.    Oceanografia Has Set Forth a Well-Pleaded Counter-claim and Introduced Ample Evidence in Support of its Allegations against DIMEX**

Oceanografia has satisfied the statutory requirements for counter-security. Counter-security is governed by Supplemental Rule E(7)(a), which provides:

> When a person who has given security for damages in the original action asserts a counter-claim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counter-claim unless the court for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise.

Fed. R. Supp. P. Supp. R. E(7)(a).

This Court recently described the purpose behind the admiralty counter-security rule as follows:

> The point of the rule is to make sure that when parties to the same transaction assert claims against each other arising from that transaction, the parties should both be fully secured, where possible, and neither should have the additional leverage of holding security, while the other must wonder if a judgment in its favor would ever be paid.

*Pancoast Trading S.A. v. Eurograni S.R.L*, No. 07 Civ. 8581, 2008 WL 190376, at *3 (S.D.N.Y. Jan. 22, 2008).

The Court of Appeals for the Second Circuit has set forth two principles for district courts to consider when a defendant seeks countersecurity: (1) "to place the parties on an

equality as regards security;" and (2) "the Rule is not intended to impose burdensome costs on a plaintiff that might prevent it from bringing suit." *Result Shipping Co., Ltd. v. Ferruzzi Trading USA Inc.*, 56 F.3d 394, 399 (2d Cir. 1995). While courts have "broad discretion" in determining whether to order the posting of counter-security, the notion of placing the parties on equal grounds "usually favors granting counter-security when a defendant whose property has been attached asserts non-frivolous counter-claims growing out of the same transaction . . . ." *Result Shipping*, 56 F.3d at 399-400. In essence, the Court must weigh "the burden of posting counter-security, against the potential injustice of requiring the defendant-counter-claimant to post security without affording reciprocal protection." *Id.* at 400.

This Court recently considered two counter-security requests under Supplemental Rule E(7) and granted both of them. In *Voyager Shipholding Corp. v. Hanjin Shipping Co., Ltd.*, No. 07 Civ. 11123, 2008 WL 400923 (S.D.N.Y. Feb. 13, 2008), the defendant Hanjin sought $388,157.80 in counter-security in connection with its speed and over-consumption counter-claims. The plaintiff challenged the counter-security request on many grounds, the primary of which concerned the lack of evidence submitted by Hanjin in support of its counter-claim. It also submitted a declaration from an English solicitor which argued that Hanjin would not be successful in the English arbitration when asserting its speed and over-consumption claims. Hanjin countered by submitting its own English solicitor's declaration which reached a different conclusion than that of the plaintiff's English solicitor. 2008 WL 400923, at *3.

Recognizing that an "inquiry into the merits of the claims is 'severely limited,'" this Court refused to determine which of the rivaling foreign law declarations was correct on a counter-security application. *Id.* (quoting *Front Carriers, Ltd. v. Transfield ER Cape. Ltd.*, No. 07 Civ. 6333, 2007 WL 4115992, at *2 (S.D.N.Y. Nov. 19, 2007)). And it rejected the notion that the

7

lack of evidence proffered at this initial inquiry stage would be fatal to Hanjin's application because Hanjin had submitted a "well-pleaded counter-claim." *Id.* Accordingly, this Court granted Hanjin's application for counter-security, though for a lesser amount than requested (as discussed, *infra*, fn.3). *Id.* at *5.

Here, Oceanografia has submitted detailed proof of its counter-claim, well above the threshold pleading requirements necessary to support its counter-claim. Oceanografia's verified counter-claim contains detailed allegations concerning DIMEX's failures and the steps taken by Oceanografia to correct the errors so that it did not default under the Main Contract with PEMEX. *See* Frevola Aff., Ex. 1. Additionally, Oceanografia has submitted a sworn declaration from its Coordinator of Maritime Pipelines who is intimately familiar with the obligations under the Main Contract, the Subcontract Agreement, the steps undertaken to correct DIMEX's failures, and the additional costs incurred because of the remedial steps taken. *See generally* Perez Dec. This declaration is accompanied by documentation supporting both the existence and amount of Oceanografia's damages claims. Altogether, this proof easily satisfies Oceanografia's burden of showing that its counter-claim is not frivolous.

In *Pancoast*, the plaintiff conceded that counter-security was appropriate, but questioned the amount and form the counter-security would take. 2008 WL 190376, at *1. This Court granted counter-security in full, without having to address the underlying merits of the case or the counter-claim alleged by the defendant.

Oceanografia respectfully submits that its well-pleaded verified counter-claim, supported by both declaratory and documentary support, merits the awarding of counter-security pursuant to Supplemental Rule E(7).[1]

B.   **Full Counter-security is Appropriate in This Case Because of the Scope of the $131,584,029 Project and the Complex Nature of the Underlying Merits to be Decided in Houston Arbitration**

Oceanografia's counter-security request should be judged on the sufficiency of its damages allegations in its counter-claim, not on such arbitrary amounts as that sought by DIMEX in its Verified Complaint or the amount of funds actually attached to date as a result of the Court's order of attachment.[2] This Court fully is familiar with these arguments, which were raised by the plaintiffs in both *Pancoast* and *Voyager* and were rejected there. Any similar arguments made here by DIMEX likewise should be summarily rejected.

For example, in *Pancoast*, this Court noted that Supplemental Rule E(7) provides that a plaintiff "must give security 'for damages demanded in the counter-claim.'" 2008 WL 190376, at *1 (quoting Supp. R. E(7)(a)). With respect to the amount of security, the Court further noted that Supplemental Rule E(7) "does not limit the countersecurity to the amount of the security provided by the defendant to secure the plaintiff's claim." *Id.* This Court aptly described the reason for such a rule is to prevent a "race to the courthouse" whereby an enterprising plaintiff

---

[1]   Oceanografia respectfully requests that DIMEX be provided no more than ten business days to comply with any counter-security order this Court might issue, and that such counter-security take a form consistent with Rule 65.1.1(b) of the Local Rules for the Southern District of New York. *Pancoast,* 2008 WL 190376, at *2-3.

[2]   *See* Verified Complaint ¶ 6, and Wherefore ¶ B, requesting an order of attachment for $4,749,382.20; Frevola Aff. Ex. 1. The December 27, 2007 notice of attachment by DIMEX provides that $1,376,677.90 had been attached as of that date. An additional $1,413,940.02 since has been attached, but Oceanografia was not the originator or beneficiary in that wire transfer. Though its name appears in a reference section of the wire transfer, Oceanografia has no property interest in the monies attached. Frevola Aff., ¶¶ 5-6. Regardless of whether these amounts may remain under attachment, DIMEX currently has frozen $2,776,677.90 as a result of this Court's order of attachment. *Id.*

9

could stave off a larger affirmative Rule B attachment claim against it by asserting a smaller claim first:

> The rule seeks to provide security of recovery against the event of a successful claim, as a substitute for the actual seizure of vessels, which otherwise would be the only means to secure an eventual judgment in the far-flung and highly mobile world of maritime commerce. Had [the defendant] filed first, it would surely have been entitled to a Rule B attachment fully securing its claim. A party with a small claim should not be enabled to defeat full security for a counterparty's larger claim simply by winning the race to the courthouse.

*Pancoast*, 2008 WL 190376, at *1.[3]

Here, Oceanografia is not suggesting DIMEX sought to employ this strategy as its intentions are unknown. But the fact remains that DIMEX withdrew its unique vessel from service under the Subcontract Agreement for purported "repairs," thereby causing Oceanografia significant damage resulting from its efforts to perform the obligation that were supposed to be performed by DIMEX. In essence, DIMEX repudiated the Subcontract Agreement and was the party which caused this dispute to be referred to arbitration and litigation, but it beat Oceanografia to filing its Rule B complaint in this Court.

Hence, Oceanografia submits that this Court should exercise its discretion to grant full counter-security under Supplemental Rule E(7) as Oceanografia has supported its counter-claim damages allegations in a substantial manner, especially at this early stage of the case. In a complex maritime construction project like the one involving sophisticated parties here, it is expected that disputes may arise which require judicial or arbitral relief. The parties

---

[3] In *Voyager*, this Court made similar findings concerning Supplemental Rule E(7) and summarized the counter-security cases where courts reached different conclusions as to the amount of counter-security to award based on the factual circumstances of each case. 2008 WL 400923, at *4. Ultimately, counter-security was limited to the amount of the defendant's assets attached by the plaintiff because, *inter alia*, the defendant had already obtained "considerable security" in a foreign litigation against the plaintiff. *Id.* Such is not the case here; no security has been obtained by Oceanografia from DIMEX in support of its claims under the Subcontract Agreement anywhere in the world. Perez Dec., ¶ 30.

acknowledged as much when agreeing to arbitrate disputes under the Subcontract Agreement. As such, it should come as no surprise to DIMEX that on a $131,584,029.00 million dollar project, wherein DIMEX expected to earn $14,269,762 for its services rendered, that a large amount of security in aid of arbitration could be sought and obtained if it failed to perform its obligations under the Subcontract Agreement. Perez Dec., ¶ 10.

DIMEX's failures had serious repercussions for Oceanografia not only on the PEMEX project, but could have affected its ability to bid on future public contracts. If Oceanografia did not properly correct and complete the work DIMEX failed to complete, under Mexican law it could have been banned for three years from bidding on public contracts. Perez Dec., ¶ 11. At great expense, Oceanografia has, and continues to, prevent a default under the Main Contract by completing DIMEX's responsibilities. As a result, Oceanografia will seek full remuneration of its damages in Houston arbitration and because of the sizable damages, seeks reasonable security in aid of arbitration here. Accordingly, Oceanografia should be granted full counter-security on its verified counter-claim in this amount of $7,327,662.43.

## CONCLUSION

Because:

(1)   Oceanografia has alleged a non-frivolous counter-claim against DIMEX on the same transaction and occurrence that is the basis for DIMEX's claim;

(2)   DIMEX has obtained its own attachment order and has attached its own security;

(3)   Supplemental Rule E(7)(a) by its terms does not limit counter-security applications to the amount claimed by the plaintiff;

(4)   Oceanografia has maritime claims against DIMEX on which it could have commenced its own Rule B against DIMEX; and

(5)   Oceanografia has not obtained any security for its counter-claims;

Defendant Oceanografia S.A. de C.V. respectfully requests that this Court grant its motion for counter-security in the amount of $7,327,662.43 and award such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       March 26, 2008

                                           Respectfully submitted,

                                           HOLLAND & KNIGHT LLP

                                           By: _____
                                                Michael J. Frevola
                                                Christopher R. Nolan
                                                195 Broadway
                                                New York, New York  10007
                                                (212) 513-3200
                                                Michael.frevola@hklaw.com
                                                Attorneys for Defendant
                                                OCEANOGRAFIA S.A. DE C.V.

# 5210237_v2